Oral argument not to exceed 15 minutes per side. Mr. Perlis for the appellant. Welcome, counsel, to the court. Have you reserved any time for rebuttal, Mr. Perlis? Yes, Your Honor. Four minutes.  Mr. Perlis. Thank you, Your Honor. My name is Michael Perlis. With me is Richard Johnson, and we have the privilege of representing the appellant federal insurance company today. I think that both the appellee and the appellant agree on one thing, that Judge Rosen could have decided this case in accordance with the expressed terms of the insurance policy, particularly endorsement 31. Where we disagree is as to the outcome. We believe endorsement 31 clearly renders the indemnity payment made by federal uninsurable and refundable. Endorsement 31 says solely with respect to any claim based upon arising from or in consequence of profit, remuneration, or advantage to which an insured was not legally entitled. The term loss is defined in Section 15. Definitions of this coverage section shall not include disgorgement by any insured or any amount reimbursed by any insured person. So the question is really twofold. Was the claim asserted in Casa Merenda a claim arising from, based upon, or in consequence of some profit, remuneration, or advantage which it received to which it was not legally entitled, and was the settlement disgorgement? Judge Rosen answered no to both questions, and we think that that was clearly erroneous. First, with respect to the issue of whether or not this claim arose out of an advantage to which Beaumont was not legally entitled, we all know that the term arising from is generally broadly construed in terms of a minimal connection between, in this case, the profit or advantage in the underlying claim. But in this case, no minimal connection is required. If one looks at Paragraph 4, which I think is almost the first operative paragraph of the underlying Casa Merenda complaint, the plaintiffs allege, quote, plaintiffs on their own behalf and on behalf of the class defined below seek to recover for the compensation properly earned by RNs employed at Detroit area hospitals, but unlawfully retained by such hospitals as a result of the conspiracy alleged herein. Then, when one turns to Paragraph 49, which is captioned Injury to Plaintiffs in the Class, it says, during the class period and before, plaintiffs have suffered substantial economic harm in the form of lost compensation as a direct result of defendants and their co-conspirators' unlawful agreement to depress RN compensation and their unlawful agreement to exchange RN compensation information. Counselor, don't those allegations apply to all of the nurses in all of the various facilities that are involved in the case? Yes, Your Honor. And does that not make a difference as to your claim that it is disgorgement based on the fact that there is a prayer for damages and the prayer and the resolution of the case also includes a claim for treble damages? No, Your Honor. It does not because I think courts in most jurisdictions, including Michigan, have held that how one labels a particular claim does not count in terms of what the essence of the claim is. And specifically, I refer to C&L Hotels in the 11th Circuit, Alanco in the District of Arizona, Allstate v. Freeman in the Supreme Court of Michigan, Conseco in Indiana, Level 3, the 7th Circuit, and Unified Western Grocers in the 9th Circuit. All of these cases, particularly in the securities area where the remedy specifically called for by the statute is for damages, have said, well, it may be damages as specified, but it really is disgorgement and or restitution. And the reverse is also true. For example, in the New York Court of Appeals decision in J.P. Morgan, where the SEC obtained by way of settlement disgorgement, the court said, at least at the early stage of that proceeding, even though it was called disgorgement, it may not be, and therefore overturned a summary judgment that had been granted for federal. This is Judge Carr. I'd like to follow up on Judge Stranch's question. If I understand the settlement and the allocation of the proceeds, only some portion of it is going to the Beaumont nurses, and other class members will receive some portion from the funds that Beaumont is paying, is that correct? That's my understanding, Your Honor. Okay, then how is it that at least that portion, which the other nurses, the other class members are receiving, is not covered under the policy? I understand your argument. I believe your argument is nothing's covered, but there's no advantage that Beaumont got from the nurses who were underpaid by other hospitals, who now are going to receive make-up pay, or whatever you want to call it, compensation damages. In other words, it seems to me that at the very least, that portion is covered. Your Honor, I have two points. One, it's my understanding that the settlement number was calculated based upon the Beaumont nurses only, and so whatever the number that Beaumont paid was a percentage of the total loss claimed by Beaumont's nurses. But in any event, our efforts to obtain discovery to determine whether or not monies went to other people were frustrated in connection with Judge Rosen's ruling on the judgment on the pleadings. He denied us the ability to get discovery, and in fact, there is any merit to the argument that even though what Beaumont disgorged was relative to its own nurses, that somehow some of that money wound up with other nurses, that is something we should have been able to discover and act on accordingly. I guess, Counselor, what I'm struggling with is the conceptual basis for this antitrust case is not, as I understand it, or the complaint is not that the nurses of Beaumont Hospital made a little bit different amount of money, and they lost this amount that they should have gotten. The nurses from three other facilities all made a different amount, and they should have gotten a different amount. My concern is that the conceptual basis of an antitrust case, and this one in particular, is that it is to compensate the members of the class for injury suffered by anti-competitive conduct. That injury may be the same across all of those various nurses who worked in different manners and in different It's what their profession suffered as a result of anti-competitive conduct. Help me understand how your argument would not mean that any antitrust case brought is effectively asking for disgorgement. For example, there are a number of antitrust situations where there would not be disgorgement. For example, cases where there is a bar to entry into the market might be an example. Where there is an essential facility case might be an example. Arguably, where there may be predatory pricing might be an example. So that not all antitrust claims or unfair trade claims or any of the anti-competitive claims that would be the subject of the endorsement would necessarily be barred. And not only that, there is the payment of defense costs, which in this case exceeded $3 million, which we are not seeking back, which is a substantial benefit. For example, in the Downey Venture case, the California Court of Appeal, in the face of coverage that expressly called for coverage for malicious prosecution, said, sorry, public policy of California will not allow it. And even though there was a settlement, the insurance company can get that money back. And it's not illusory coverage because you paid defense costs just this year. I understand that you have an argument on the defense costs. I'm still struggling with the basic conceptual basis because any time you have an anti-competitive activity taken, it accrues to the benefit of the person who took it. And that's kind of the basis, the purpose of doing it. And I'm just struggling with why yours actually qualifies as disgorgement on a conceptual basis. I believe the black letter law and antitrust law is that you don't, for example, get recoupment offsets. And doesn't that basis of antitrust law tell you that you are not giving back to the members of the class something that they should have had, but you are instead in fact seeking to give them damages for the entire impact of anti-competitive activity. So tell me, you are just losing me on why yours is disgorgement under your argument and that wouldn't really apply to any antitrust case. Well, a lot of it depends on how the damages, or in this case disgorgement, restitution are calculated, where the money goes. For example, it might go to the federal government as a form of forfeiture, treble damages. In this case, for example, had there been joint and several liability and had all the money been collected from Beaumont, assuming there had been coverage under those circumstances, then it seems to me federal would have been entitled to say, okay, we can deduct from this liability that which went to your nurses, but you will still have to pay the federal what went to other nurses. So there would be coverage in that regard. But the payment made by Beaumont is made to satisfy the entirety of the claims brought against it. How that money gets divided among class members, why is that not a separate question? Well, because if the settlement number is calculated based upon the amount of damage inflicted on Beaumont nurses and is designed to compensate primarily or exclusively the Beaumont nurses based on that calculation, then I think all you're doing is taking the money away from Beaumont and giving it to the nurses, which is your classic disgorgement followed by restitution. Well, but is it? I mean, you wrote this policy and it seems to me that the concepts of both disgorgement and restitution should not be given the flexible meaning that they may have been given in securities in other cases. And it's my understanding that if you look at the dictionary, they involve a return to someone of something that you actually have taken from them. And I see a difference between withholding something that you ought to have paid that the law required you to pay and having gone out and taken it from them and kept it. And I think at least my understanding of what both disgorgement and restitution is that it includes the concept or the act of having taken from someone. Here they did not do so. They simply didn't pay over that which the law later determined they were obligated to have paid. So I don't find securities cases and other cases apposite because you're not dealing there with the construction of an insurance contract, which obviously needs to be read narrowly against the company. The closest analogy, your honor, is the American medical security case, the executive risk, which is the Eastern District of Wisconsin in 2005. It's actually very similar in this sense that the American medical provided medical insurance policies to consumers that were arguably or supposed to be renewable at the option of the consumer. American medical decided to cancel a bunch of policies to avoid paying benefits which they might otherwise be obligated to pay and sometimes agreed to rewrite at much higher premium or more limited coverage. A class action was held that the American medical security avoided making a payment it would otherwise have had to make and therefore ordered that it had to in essence disgorge what it avoided having to make back to the class. But did that involve, was the term disgorgement or restitution any part of the insurance documents in that case? Well, no, your honor. And that's my point. But what this case went off on was a public policy and followed level three in the seventh circuit and said this is just uninsurable as a matter of law, which is also an exclusion in the definition of loss in the federal policy in this case. We understand that's another issue. I believe your time is up, counselor. You will have your rebuttal. Good morning, your honors. Keith Brooks on behalf of the Pele William Beaumont Hospital, now known as William or Beaumont Health System. And sir, I apologize for starting off the question. This is Judge Carr. But what is the answer to the question as to whether the amount of settlement paid by the hospital is limited only to, is calculated upon what the nurses did not receive? Or is some portion or substantial portion of the settlement ultimately going to benefit non-Beaumont nurses? The answer, quite simply, your honor, is that there is absolutely nothing in the record, nor would there ever be through any amount of discovery, anything in the record to support the notion that the settlement payment made by William Beaumont Hospital to get out of a potential $1.8 billion claim was intended to be, or was allocated in any way, shape, or form to William Beaumont Hospital nurses. The settlement agreement is part of the record. The settlement agreement provides that there's a payment made by Beaumont into a settlement fund to be administered by class counsel. How that money is distributed will ultimately be an issue to be determined between class counsel and Chief Judge Rosen. The notion that coverage for this claim should be dependent on what Chief Judge Rosen and class counsel ultimately determine is an equitable way to distribute the class fund, I think, finds no support in this policy and no support in any case I've ever seen. Does that answer your question? Well, yeah, to some extent. My reading of the settlement documents was that, or my interpretation, more was paid by Beaumont than its nurses are going to get. And at the end of the day, its nurses are going to get a certain sum of money. They may have to wait until the end of the day to find out whether that's all part or less than what Beaumont paid. But you have answered my question, and the ultimate answer may have to If Beaumont paid more than its nurses get as unpaid compensation, then at least that portion above and beyond what its own nurses get is clearly covered in my view. That's all. I'm sorry, Your Honor. That hardly can be described as disgorgement or restitution of an advantage that Beaumont got from its anti-competitive conduct. That's all. Go ahead. Thank you, Your Honor. I, too, went to the dictionary and admittedly did it the perhaps somewhat lazy way. I went online and there are a number of online dictionaries and looked for a number of definitions of disgorge and disgorgement. I'll omit the ones that refer to discharging through the throat or mouth. I didn't realize that was an alternative definition. But they all involve return of ill-gotten gains. Definitions like repayment of ill-gotten gains that is imposed on wrongdoers by the courts. Funds that were received through illegal or unethical business practices are disgorged or paid back with interest to those affected by the action. Dictionary.com. To surrender or yield something, especially something illicitly obtained. Oxford Dictionary. Yield or give up funds, especially funds that have been dishonestly acquired. The difference between all of these cases that are being cited, none of which are antitrust cases, and this case is that as I believe frankly Judge Strachan's questions brought out, this is for class-wide alleged damages. And let's also keep in mind that the conspiracy count and the intentional claim or the per se claim was dismissed on summary judgment by Judge Rosen and at the time this judgment was entered, all that remained was a rule of reason claim that basically the gist of which was that these seven or so hospital systems shared information and it may have had an anti-competitive effect on the market generally. And there would be nothing required nor would there be necessarily any proofs in that trial about Beaumont and Beaumont nurses and that's why this type of damage remedy cannot be conceivably deemed to be disgorgement as defined in this policy. This, as one of the judges noted, this was a specifically negotiated multi-risk policy issued by Chubb to Beaumont that included a specific endorsement for antitrust claims. It includes actual or alleged price-fixing restraints of trade and as one of the judges pointed out in one of the questions, it necessarily follows that any claim, any claim of that ilk would be to somehow benefit directly or indirectly the person engaging in that conduct. And so if that's what this carve-out in Endorsement 31 which deals solely with certain types of claims, they does it solely arise out of, that there is just no way that it follows that what did they sell us? What did they sell us in Endorsement 10 when they said you have coverage for these types of claims? On the public policy, I would ask the same admittedly rhetorical question. This is Chubb. They're negotiating with a Michigan-only non-profit health system. If this is all uninsurable under Michigan law, what did they sell my client? Why did they sell it to my client? Why did they charge premiums to my client if as they claim in their brief since 1943 it's been uninsurable? And the answer to the rhetorical question is it is insurable. It's no Michigan law to support the notion that it wouldn't be. Michigan is very limited in looking to the types of things that might be deemed uninsurable such as intentional infliction of grievous bodily injury, things like burning down your own building and then suing your property insurer. And it's one that looks to moral hazards and whether the existence of the insurance, there's a nexus between the existence of insurance and the commission of the allegedly unlawful act. Your point simply is that somebody who, there's simply no incentive, it doesn't increase the incentive to insurance. Is that your contention? It certainly is. It certainly is, especially when you've got a $25 million limit. And just look at this case, $1.8 billion. The notion that somebody would be incentivized to expose themselves to a potential liability of $1.8 billion because they have a $25 million supplement for antitrust claims is completely illogical, I think. And there's certainly nothing, there's no Michigan law that even comes close to suggesting that this type of statutory violation, again we're talking about a rule of reason antitrust claim, would be uninsurable under Michigan law. Your Honors, unless you have questions, we believe we've adequately set forth what we wanted to say in our papers. We believe that Chief Judge Rosen wrote an extremely well-written and thorough opinion, and unless you have questions, I don't have any further argument. I assume you would agree with me that restitution like disgorgement involves a sense of restoring something that was taken rather than paying over something that was improperly withheld. Absolutely, and in fact, when I looked up the dictionary definitions online, restitution in the Merriam-Webster dictionary is the act of returning something that was lost or stolen to its owner. On an alternative definition, a legal action serving to cause restoration of a previous state. Again, all of their cases in this level, whether it's level three or all of the cases that follow that, or their hypothetical in their brief about the Michelangelo sculpture, they all involve basically fraud, money obtained by fraud, or intentional misconduct where it was received from the plaintiff and they were asking to return it, to restore it. And that has nothing to do with compensatory damages under the antitrust laws to an entire class of nurses at various hospital systems. We have no further questions. Mr. Perlis for rebuttal. Thank you, Your Honor. A few points. Number one, endorsement 31 doesn't only deal with money that has been received improperly by an insured. It also talks about advantage. To the extent that the insured received an unlawful advantage, that too would be precluded to the extent that there was a requirement for disgorgement. There is no doubt that the whole essence of the Casamarenda claim was an improper advantage received by the insured. That's what paragraph four specifically states. But it wasn't received. The problem is, sir, at least in my view, and please address this, it wasn't, quote, received from the nurses. It was, sure, it was money obtained by, to their advantage because they didn't pay it out. But your policy excludes only those forms of damage used generally to constitute disgorgement or restitution. If it included all funds obtained by any sort of advantage, anything that was obtained by such an advantage, that would be different. But it doesn't. It's much more limited, it seems to me. But that's the reason, Your Honor, I quoted for you the American medical security case, which was a case that involved the retention of money as opposed to the receipt of money. But that was not an insurance construction case, correct? No, it was an insurance construction case. And that's what we have here. Yeah, it was exactly an insurance case where the question was whether or not American medical security's carrier, executive risk, had to reimburse them for the amount of money that they paid to policyholders that they kept that they should have otherwise paid for medical benefits. The other thing was the question of what the purposes of the antitrust laws are. And I wanted a quote briefly from USX Corp. The Adriatic Insurance, which is a Western District of Pennsylvania case affirmed by the Third Circuit. And it says, while the argument can be made as plaintiffs suggest that any award under the antitrust laws merely is designed to compensate the injured plaintiff, the purpose of permitting suits for treble damages is to deter conduct which distorts the natural functioning of an economic market. And the award in such a case is at least equally designed to transfer ill-gotten gains from those who have violated the law to those who have been deprived of the opportunities by that violation. Of course, any such recovery is beyond an insurer's reasonable expectation of the purposes of insurance and the meaning of the term damages. And that is in the context of an antitrust case and is a case that was affirmed by the Third Circuit. On public policy grounds, then, it is not simply the question of securities law violations that are precluded by public policy, but other types as well, including antitrust. Now, the other question that Your Honor asked was about where the money goes. And I think there are really two aspects to that question. The first is how the award was calculated. And I think there discovery would clearly show that each of the settling hospitals, and there's one that hasn't settled, paid an amount of money predicated on what the claims of its own nurses were. Now, how that ultimately is distributed, it may be distributed to a pool of nurses, some of whom worked for Beaumont, some of whom didn't. But if, in essence, what Beaumont paid was based on the amount its nurses were due under the theory of the plaintiff's damages expert, that, to me, is disgorgement, but at a minimum would entitle us to discovery on that very issue, which was precluded by Chief Judge Rosen. But we think, Your Honor, that, for example, if Beaumont violated the minimum wage law and didn't pay its nurses the minimum wage, I don't think anyone would suggest that that obligation to reimburse the nurses for the minimum wage that was due them would be insurable. And, in fact, the statute in Michigan that deals with it doesn't speak in terms of disgorgement or restitution, but sets forth the measure of damages as the difference between what was paid and what should have been paid, and then says, in addition, there is We thank you both for your arguments, and we'll take the case under advisement.